# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF FLORIDA

### Case No.: 1:15-cr-20545--LENARD

**UNITED STATES OF AMERICA,**

    **VS.**

**GUILLERMO SANCHEZ-BADIA**

    **Defendant.**

_____

### ORDER DENYING DEFENDANT'S MOTION TO REVOKE THE MAGISTRATE JUDGE'S PRETRIAL DETENTION ORDER (D.E. 51) AND DENYING MOTION FOR A HEARING (D.E. 54)

THIS MATTER is before the Court on Defendant's Motion to Revoke the Magistrate Judge's Pretrial Detention Order (D.E. 51) and Motion for a Hearing (D.E. 54). Having reviewed the Motion and the underlying record, the Court finds as follows.

## I.    Procedural History & Factual Proffers

On July 16, 2015, Defendant Guillermo Sanchez-Badia was indicted on one count of conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349, six counts of wire fraud in violation of 18 U.S.C. § 1343, one count of conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h), and fifteen counts of money laundering in violation of 18 U.S.C. § 1956(a)(1)(B)(i). (D.E. 3.) On July 23, 2015, Defendant appeared for his initial appearance before Magistrate Judge John O'Sullivan who scheduled a detention hearing for July 28, 2015. (D.E. 11.) Defendant's detention hearing was held before Magistrate Judge William Turnoff – where the Government and the Defendant proceeded by factual proffer. (D.E. 15.)

1

The Government proffered that:

(1) Defendant committed the instant offense while serving a sentence of probation imposed by Judge Gladys Kessler in case number 10-cr-105 in the United States District Court for the District of Columbia;

(2) Defendant used the proceeds of the alleged criminal activity charged in this Indictment to pay restitution in his District of Columbia case;

(3) Defendant violated his probation in case number 10-cr-105 by "bribing a community service provider";

(4) Defendant was resentenced to probation by Judge Kessler and during this time period allegedly continued the criminal conduct that he is charged with in this Indictment;

(5) The indictment in this case involves a $42 million dollar Ponzi scheme that utilized two (2) currency exchanges to defraud commercial lenders and the United States Export-Import Bank;

(6) In the instant case, Defendant and his co-conspirators allegedly set up several companies that invoiced dummy companies, also controlled by Defendant, for sales of goods outside the United States and then would sell the invoice to a factor who would lend approximately ninety (90) percent of the value of the non-existent goods contained in the invoice;

(7) When it came time for earlier invoices to be paid, new purported export sales would be generated and the money derived from the sale of these new invoices would be run through several bank accounts and ultimately would be deposited in a company controlled by Defendant and his co-conspirators.  The money would then be used to pay back earlier invoices;

(8) This alleged criminal enterprise continued after Defendant was found guilty in his District of Columbia case and money from the factoring scheme was used to pay restitution in his criminal case;

(9)   By using money from the factoring scheme to pay his criminal restitution, the alleged Ponzi scheme was left cash-short and the Defendant and his co-conspirators obtained a new loan with the Export-Import Bank;

(10)  Defendant and his co-conspirators used this new loan from the Export-Import Bank to pay off the commercial lendors/factors which encouraged the commercial lendors to continue lending and allowed the Ponzi scheme to survive;

(11)  The victims of Defendant's alleged crimes suffered $11 million in losses;

(12)  Defendant utilized over fifty (50) bank accounts to launder the proceeds of the Ponzi scheme;

(13)  Over $1,000,000 in proceeds from the allegedly illegal activity are currently unaccounted for;

(14)  Defendant has travelled extensively throughout South America – including Colombia and Bolivia;

(15)  Defendant has at least one foreign bank account;

(16)  The weight of evidence against the Defendant is strong given that three of his co-conspirators have already pled guilty and agreed to testify against him; AND

(17)  Defendant's medical conditions only require follow ups every two or three months.

(D.E. 51-2.)

The Defendant proffered that:

(1) He has close ties to the Miami community because he has lived here since 1974 and his immediate family lives in Miami;

(2) He has no passport, and therefore, cannot leave the United States;

3

(3) He has no financial resources other than his $979.00 per month in disability income[1];

(4) He has no record of failing to appear for scheduled court dates; AND

(5) He has significant health concerns – including multiple stents in his heart – which requires extensive medication.

He asserts that should be released on the following conditions: (1) Execution of a $500,000 personal surety bond with at least six co-sureties which would be guaranteed by two certificates of deposit worth over $200,000 and the equity in his daughter's condo which exceeds $200,000; (2) home confinement; (3) electronic monitoring; (4) he be prohibited from engaging in financial transactions whatsoever; and (5) he be permitted to leave his home only to attend church, see his health care providers and meet with his attorneys in this case.  (D.E. 51 at 5.)

Following the factual proffers by the Government and Defendant, Judge Turnoff noted that:

> Even by Miami standards, this is an enormous allegation, a very serious crime, which itself is an incentive to flee; the fact that there's substantial quantities of money involved at this stage on the record makes the risk of flight more likely than not.  There's a salient factor that he's violated his probation in the past.  When you're on probation, that's a court order. And when you don't follow everything you're supposed to do as conditions of probation, that's violations of the court order. It's an insult to the Court.  It shows lack of responsibility and respect for the Court.  So those are salient factors that I'm just noting for the record.

---

[1] Defendant attached to his Motion to Revoke Pretrial Detention evidence that he closed a bank account with St. Kitts-Nevis-Anguilla National Bank.  (D.E. 51-7.)

(D.E. 51-2 at 9.)  Judge Turnoff concluded that there was no condition or reasonable combination of conditions that would reasonably assure Defendant's appearance at trial and ordered him detained.  Id.  Defendant filed his Motion to Revoke the Magistrate Judge's Pretrial Detention Order on December 8, 2015.  (D.E. 51.)

## II.     Standard of Review

In the Eleventh Circuit, a district judge reviewing the decision of a magistrate judge to detain a pretrial defendant must "undertake an independent review of the case, enter [her] own findings in writing, and set forth the reasons supporting [her] decision." See United States v. King, 849 F.2d 485, 489 (11th Cir. 1988) (quoting United States v. Hurtado, 779 F.2d 1467 (11th Cir. 1985)); see also United States v. Sierra, 622 F. Supp. 1034, 1035 (S.D. Fla. 1985) (quoting United States v. Medina, 775 F.2d 1398 (11th Cir.1985) ("the appropriate standard to be employed by the district court on review of the magistrate's order of pretrial detention is de novo.").  A de novo hearing is not required so long as the District Judge "undertakes a de novo review of the factual posture of the case." See United States v. Gaviria, 828 F.2d 667, 670 (11th Cir. 1987) (quoting United States v. Hurtado, 779 F.2d 1467, 1480 (11th Cir. 1985)).

## III.     Discussion

Under the Bail Reform Act, a court "shall order the pretrial release of the person" unless "such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."  18 U.S.C. § 3142(b).  If after the detention hearing the Court finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety

of any other person and the community," then the Defendant must be detained pending trial. Id. § 3142(e).  Either ground – serious risk of flight or danger to the community – is sufficient to support an order of detention.  King, 849 F.2d at 489 & n. 3.  The United States must prove serious risk of flight by a preponderance of the evidence and danger to the community by clear and convincing evidence.  See United States v. Quartermaine, 913 F.2d 910, 915 (11th Cir. 1990); United States v. Medina, 775 F.2d 1398, 1402 (11th Cir. 1985).

The thrust of the Government's argument for detention is that Defendant presents a serious risk of flight.  Therefore, the Court will begin by considering whether the Government has proven by a preponderance of the evidence that the Defendant is a serious risk of flight and that no condition or combination of conditions would reasonably assure Defendant's appearance at trial.  When determining whether the Defendant poses a serious risk of flight, the Court must consider several statutory factors, including (1) the "nature and circumstances" of the charged offense, (2) the weight of the evidence against the defendant, (3) the defendant's history and characteristics, including his character, his family and community ties, his past conduct, his criminal history; (4) his record concerning appearance at court proceedings; (5) whether at the time of the instant offense the defendant was on probation, parole or other supervisory release for an offense under Federal, State or local law.  See 18 U.S.C. § 3142(g).

At the detention hearing, the Government proffered that the Defendant is a serious risk of flight because: (1) he is charged with twenty-two counts of conspiracy to commit wire fraud, wire fraud, conspiracy to commit money laundering and money laundering –

all of which carry maximum penalties of twenty years imprisonment; (2) there is $1,000,000 in unaccounted for currency that was the product of Defendant's crimes; (3) Defendant has travelled extensively throughout South America – including Bolivia and Columbia; (4) Defendant violated his probation in his District of Columbia case, and in fact, was on federal probation when he allegedly committed the instant offenses; (5) the weight of the evidence against the Defendant is strong given that three of his co-conspirators have agreed to testify against him; (6) he has or has had foreign bank accounts; and (7) Defendant does not respect the authority of courts because he committed the instant crime while on probation for a federal conviction in the District of Columbia and he used some of the proceeds of the instant crime to pay restitution in his preexisting federal case.  (D.E. 51-2 at 3-6.)

In contrast, Defendant proffered that he is not a serious risk of flight because of his strong ties to this community.  Id. at 6, 8. He has lived in Miami since 1974, and his immediate family members – including his wife, daughters, grandchildren and sisters – live in Miami.  Id. at 8.  Additionally, Defendant noted that the Government's assertions that he would flee abroad are unfounded because he does not have a valid passport.  Id. at 6.  Defendant also contends he lacks the financial means to flee because his only income is $979.00 per month from disability.  Id. at 7.  Defendant conceded that the primary factor in favor of detaining him is his violation of his federal probation in the District of Columbia.  Id. at 6.  However, he argues there are no allegations that he ever failed to appear for a court date and that his probation violations were technical in nature.  Id.

Finally, Defendant asserted he has significant health concerns which militate in favor of his release.

Having reviewed de novo the factual proffers by the Government and the Defendant, the transcript of the detention hearing (D.E. 51-2) and having considered all additional arguments raised by the Parties in their subsequent briefing, the Court finds that the Defendant poses a serious risk of flight and should be detained. Several factors are troubling to the Court, leading to the undersigned's decision that no condition or combination of conditions will reasonably assure Defendant's appearance at trial. First, over $1,000,000 in funds derived from Defendant's alleged criminal conduct are currently unaccounted for. Second, Defendant has significant ties and business interests in Puerto Rico – as evidenced by his request to travel to Puerto Rico to attend to business matters.[2] While Defendant does not have a passport, he does not need a passport to travel to Puerto Rico. Third, and most importantly, the Defendant has demonstrated his willingness to disregard court orders by violating the terms of his probation, including the unrebutted factual proffer that he bribed a community service provider, was placed back on probation and allegedly committed the instant offense while still on probation. If the threat of imprisonment for a probation violation did not secure Defendant's compliance with court orders, the undersigned is unsure what condition or combination of conditions

---

[2] In his District of Columbia Case, Defendant filed a Motion for Permission to Travel to Puerto Rico for business purposes. See D.E. 52-3. He stated that his lumber business in Puerto Rico was "necessary to maintain economic support for him and his family." Id. at ¶ 3. It is also worth noting that at his detention hearing in the instant matter, Defendant proffered that his only income derived from a disability check. He never mentioned income from a lumber company in Puerto Rico.

will reasonably assure the Defendant will appear when he is ordered to do so.  Finally, given the seriousness of the allegations against the Defendant – including the potential for multiple twenty year sentences – and the weight of the evidence against him – three of his co-conspirators are set to testify against him – the Defendant has every incentive to flee this jurisdiction.  For all of these reasons, the Court finds the Government has proven by a preponderance of the evidence that the Defendant is a serious risk of flight, and therefore, he must be detained pending trial.

### IV.    Conclusion

For these reasons, it is hereby **ORDERED AND ADJUDGED** that:

(1)  Defendants' Motion to Revoke the Magistrate Judge's Detention Order  (D.E. 51) is **DENIED**;

(2) Defendant's Motion for a Hearing (D.E. 54) is **DENIED**; AND

(3)  Defendant is **ORDERED** detained pending trial;

Additionally, the Court **DIRECTS** that:

(1)  The Defendant be committed to the custody of the Attorney General for Confinement in a corrections facility separate, to the extent practicable, from other persons awaiting or serving sentences or being held in custody pending appeal;

(2)  The Defendant be afforded reasonable opportunity for private consultation with counsel; AND

(3)  The Defendant, upon an order of a court of the United States or on request of an attorney for the Government, will be delivered by the person in charge of

the correctional facility to the United State marshal for the purpose of any appearance in connection with a court proceeding.

**DONE AND ORDERED** in Chambers at Miami, Florida this 8th day of January, 2016.

JOAN A. LENARD
UNITED STATES DISTRICT JUDGE